**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEILA RIOS,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | **NO. 13-CV-1619** |
| **MARV LOVES 1, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                **September 2, 2015**

        Presently pending before the Court are Plaintiff's Motion for Default Judgment, (ECF

No. 31), Defendants' Motion to Set Aside Default Judgment and File Answer to Amended

Complaint (ECF No. 39), and Plaintiff's Reply in Further Support of the Motion for Default

Judgment (ECF Nos. 40, 40-2).  For the reasons that follow, Defendants' Motion to Set Aside

Default Judgment (ECF No. 39) is **DENIED** and Plaintiff's Motion for Default Judgment (ECF

No. 31) is **GRANTED**.


**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

        From September 2008 to April 2009, Keila Rios ("Plaintiff") worked as a bartender at

Marv Loves 1, Marv Loves Too, and Set It Off (collectively, "the Bars"), establishments in

Philadelphia, Pennsylvania owned and operated by individual defendant Marv Love ("Love").[1]

----

        [1]  The legal name of individual defendant "Marv Love" appears to be "Marvin Kilgore."
(Aff. of Service, ECF No. 25; Emergency Mot. to Withdraw 5, ECF No. 15).  However, the
parties have continually referred to Mr. Kilgore as "Marv Love."  In the interest of consistency,
this Court will do the same.  Additionally, Defendants initially denied that "Marv Loves 1" was a
business in Philadelphia owned and operated by Marv Love, though they admitted that Plaintiff
was hired to work there.   (Answer ¶¶ 9, 13, 17, ECF No. 5).  However, this issue has not been
further disputed or briefed and there is no allegation that service was made on the incorrect

(Compl. ¶¶ 9-11, ECF No. 1; Answer ¶¶ 10-11, ECF No. 5).  During this time, individual defendant Wilfredo Baez ("Baez") was the manager at the Bars and one of Plaintiff's direct supervisors.  (Compl. ¶¶ 12, 18; Answer ¶¶ 12, 18).

Plaintiff alleges that during the entirety of her employment, Baez subjected her to constant, unwelcome sexual advances and other harassment that created a hostile work environment.  (Compl. ¶ 21).  Specifically, Plaintiff alleges that Baez demanded that she engage in a sexual relationship with him, made sexual comments to her,[2] touched her in a sexual manner, and invaded her privacy.  (*Id.* ¶¶ 20-23).  Further, Plaintiff alleges that on December 31, 2008, Baez grabbed her and forcibly placed his exposed penis in her hand.  (*Id.* ¶ 22(d)).

In late March or early April of 2009, Plaintiff purportedly told Baez that she would never engage in sexual activities with him or any of the other managers at the Bars and complained that she should not have to do so to be fairly treated at work.  (*Id.* ¶¶ 24-25).  Plaintiff alleges that immediately following this confrontation, her hours were reduced and she was scheduled to work at locations where she earned less tip money, effectively reducing her pay from approximately $1200 per week to $300 per week.  (*Id.* ¶ 25).  On or about April 8, 2009, Plaintiff's employment was terminated.  (*Id.* ¶ 26; Answer ¶ 26).  Plaintiff alleges that Love and the Bars failed to take any remedial measures to correct Baez's behavior or discipline him for his conduct, and instead terminated her employment in retaliation for refusing Baez's sexual advances and complaining about the alleged sexual harassment.  (Compl. ¶¶ 27-28, 32-35).

---

business entity; thus, this Court will likewise use the name provided in the Complaint, "Marv Loves 1," to refer to this corporate defendant.

[2]  Plaintiff alleges Baez continuously stated to her, "Don't forget who makes your schedule and don't forget to f--- your manager."  (Compl. ¶ 22(a)).

On March 27, 2013, Plaintiff filed a complaint against the Bars, Marv Love, and Wilfredo Baez (collectively, "Defendants"), alleging one count of violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), for unlawful employment practices based on sex. (*Id.* ¶¶ 53-60). Summonses were issued on this date. (ECF No. 1). Defendants retained the counsel of Sidney L. Gold, Esq., who entered his appearance on April 26, 2013. (Gold Notice of Appearance, ECF No. 2). On June 26, 2013, Defendants filed an Answer in which they denied all facts related to any harassment of Plaintiff and retaliatory animus for her termination.[3] (Answer ¶¶ 14, 19-52). Additionally, Defendants denied any violation of Title VII and offered a number of affirmative defenses. (*Id.* ¶¶ 54-61).

On January 15, 2014, Defendants' counsel filed an Emergency Motion to Withdraw as Counsel, citing Defendants' lack of communication, nonpayment, and failure to cooperate. (Emergency Mot. to Withdraw ¶ 4, ECF No. 15). The Court ordered Defendants to appear on January 29, 2014, to show cause why counsel should not be allowed to withdraw. (Order, ECF No. 17). Defendants failed to appear or to otherwise contest the motion. The Court granted counsel's Motion to Withdraw on January 30, 2014, imposing a sixty day stay to allow Defendants the opportunity to secure new counsel. (Order, ECF No. 19). The stay order explained that if Defendants did not retain new counsel within sixty days — by March 31, 2014 — the Court would presume the individual defendants were continuing *pro se*. (*Id.*).

On March 5, 2014, during the Court-ordered stay, Plaintiff moved for leave to amend her Complaint. (Mot. for Leave to Am. Compl., ECF No. 22). By March 31, 2014, new counsel had not entered an appearance for Defendants, nor had Defendants responded to Plaintiff's motion to amend. The Court granted the unopposed motion to amend the Complaint on April 2, 2014.

---

[3] The Court had previously granted Defendants until June 28, 2013 to file an Answer. (ECF No. 4).

(ECF No. 23).  Plaintiff filed an amended complaint against all Defendants on April 4, 2014,

alleging the following six counts:  (1) violation of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000(e) *et seq.*, for unlawful employment practices based on

discrimination based on sex, sexual harassment, and retaliation; (2) violation of Pennsylvania

Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*, based on the same violations as Count 1;

(3) assault and battery against Baez for the events of December 31, 2008; (4) intentional

infliction of emotional distress against Baez; (5) outrageous conduct causing emotional distress

against Baez; and (6) negligent hiring, retention and supervision against Marv Love and the Bars.

(Am. Comp. ¶¶ 53-85, ECF No. 24).  The Amended Complaint was served on Baez on April 12,

2014, on Marv Loves Too on April 14, 2014, and on the remaining three Defendants on April 15,

2014.  (ECF Nos. 25-29).  Defendants did not Answer Plaintiff's Amended Complaint within the

period prescribed by the Federal Rules of Civil Procedure; to date, no Answer has been filed.

Plaintiff requested the Clerk of Court enter default on June 11, 2014.  (Pl.'s Mot. for

Entry of Default, ECF No. 30).  Default was entered by the Clerk of Court on the following day

for failure by Defendants to appear, plead, or otherwise defend.  Still, Defendants failed to

respond in any way to the entry of default.

On January 7, 2015, Plaintiff filed a motion for default judgment against Defendants.

(Pl.'s Mot. for Default J., ECF No. 31).  The Court set a hearing on the motion for March 2, 2015

and directed all parties to file pre-hearing memoranda by February 24, 2015.  (ECF No. 32).

Plaintiff timely filed a pre-hearing memorandum requesting damages and attorney's fees and

costs.  (Pl.'s Pre-Hearing Mem., ECF No. 33).  Defendants did not respond to the motion or

submit a prehearing memorandum; however, individual defendants Love and Baez appeared *pro*

*se* at the March 2, 2015 hearing to contest the entry of a default judgment against them.  Because

the corporate defendants could not appear *pro se*, the Court stayed the hearing until April 10,

2015.  On April 9, 2015, attorney Donald Chisholm II entered his appearance on behalf of all

Defendants and requested a continuance of the hearing scheduled for the next day.  (ECF No.

37).  The Court continued the hearing until May 27, 2015, ordering Defendants to file any

written opposition to Plaintiff's Motion for Default Judgment by May 11, 2015.  (ECF No. 38).

Defendants untimely filed their Motion to Set Aside Default Judgment on May 12, 2015.[4]

(Defs.' Mot. to Set Aside Default, ECF No. 39).

The Court held oral argument on the pending motions on May 27, 2015.  (Hr'g Tr., ECF

No. 47).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment.

*See* Fed. R. Civ. P. 55.  Entry of default is a ministerial task performed by the Clerk of Court

upon request.  Federal Rule of Civil Procedure 55(a) provides that "the clerk must enter default"

when a defendant has "failed to plead or otherwise defend, and that failure is shown by affidavit

or otherwise."  Fed. R. Civ. P. 55(a); *see also United States v. Mulvenna*, 367 F. App'x 348, 350

(3d Cir. 2010) (per curiam) (not precedential).  Once the clerk has entered default, the plaintiff

may move for default judgment.  The clerk may enter default judgment if the plaintiff's claim is

for a sum certain and the defendant has failed to appear and is not an infant or an incompetent

person.  Fed. R. Civ. P. 55(b)(1).  In all other cases, including where the defendant has appeared

---

[4]  In this motion, Defendants requested leave to "answer the Amended Complaint with
the attached *proposed* answer."  (Defs.' Mot. to Set Aside Default 1).  However, the proposed
answer was not actually attached, nor did Defendants otherwise attempt to provide the proposed
answer to the Court.

personally or by representative, the plaintiff must apply to the court for a default judgment.[5]  *Id.* 55(b)(2).

"The time between the entry of default and the entry of default judgment provides the defendant with an opportunity to move, pursuant to Rule 55(c), to vacate the default." *Mulvenna*, 367 F. App'x at 350 (internal citation omitted).  An entry of default may be vacated "for good cause shown."  Fed. R. Civ. P. 55(c).  It is within the court's discretion to set aside an entry of default.  *See Damboch v. United States*, 211 F. App'x. 105, 109 (3d Cir. 2006) (not precedential); *Bryant v. Jackson*, No. 13-2823, 2015 WL 3616974, at *2 (D.N.J. June 8, 2015) (internal quotation omitted).  In exercising this discretion, the court must consider the following factors: (1) whether the defendant has a meritorious defense; (2) whether the plaintiff would be prejudiced by vacating the default; and (3) whether the default occurred as a result of the defendant's culpable conduct.[6]  *See Sourcecorp Inc. v. Croney*, 412 F. App'x 455, 459 (3d Cir. 2011) (not precedential); *Budget Blinds, Inc. v. White*, 536 F.3d 244, 256 (3d Cir. 2008) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

In general, default judgments are disfavored because they have the effect of preventing a case from being decided on its merits.  *E. Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 652 F. Supp. 2d 599, 604 (E.D. Pa. 2009).  Accordingly, the Third Circuit has instructed that doubtful cases should be resolved in favor of the party moving to set aside a default entry.  *See*

---

[5]  Under Rule 55(b)(2), "[t]he court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).  If the party against whom default was entered, or its representative, appears, it must be served with written notice of the application for default judgment at least seven days before the hearing.  *Id.*

[6]  At times, the Third Circuit has instructed that a fourth factor, "the effectiveness of alternative sanctions," should be considered.  *Emcasco v. Sambrick*, 834 F.2d 71, 74 (3d Cir.1987).

*$55,518.05 in U.S. Currency*, 728 F.2d at 194-95 ("Any doubt should be resolved in favor of setting aside the default and reaching a decision on the merits."); *see also Emcasco*, 834 F.2d at 73-74; *Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120, 122 (3d Cir. 1983). However, the Third Circuit has also cautioned that the trial courts must "weigh the equities of the situation and the need for the efficacious resolution of controversies." *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 656 (3d Cir. 1982). "The exercise of such judgment does not lend itself to a rigid formula or to a per se rule." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984).

## III.    DISCUSSION

### A.    Motion to Set Aside Entry of Default

Defendants have moved to set aside the entry of default of against them.[7] (Defs.' Mot. to Set Aside Default, ECF No. 39). They argue that they have established a meritorious defense, that Plaintiff will not prejudiced if the case proceeds on its merits, and that the delay in this case

---

[7] Defendants styled their motion as a motion to set aside default judgment. (Defs.' Mot. to Set Aside Default J. 3-5, ECF No. 39). A party against whom a default judgment is entered may move to have the judgment set aside under Rule 60(b) for reasons including "mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6). The factors the Court considers in deciding whether to set aside a default judgment are the same as those it considers when considering whether to set aside an entry of default: prejudice to the plaintiff, whether the defendant has shown a meritorious defense, and whether the default was the result of the defendant's culpable conduct. *See U.S. Currency*, 728 F.2d at 195. The distinction is one of degree, in that "[s]etting aside a[n entry of] default requires less substantial grounds than setting aside a default judgment." *Feliciano*, 691 F.2d at 656.

As set forth *supra*, in this case, the Clerk of Court has entered default against all Defendants. Plaintiff has applied to the court for entry of default judgment; however, at the time of Defendants' Motion, the Court had yet to enter a default judgment. Accordingly, Defendants' motion to set aside the default judgment is properly construed as a motion to vacate the entry of default. Because the factors considered under Rule 55(c) and Rule 60(b) are identical, and because Defendants conceded at oral argument that their motion should be viewed as a motion to vacate the entry of default, (Default Hr'g Tr., 35:25-36:2), the Court will construe and refer to Defendant's motion as a motion to vacate the entry of default.

is not due to their culpable conduct, as they were abandoned by counsel and otherwise unaware of the need to respond to the Amended Complaint.  Plaintiff responds that Defendants are not entitled to vacate the entry of default because they have failed to show good cause under any of the factors considered in conducting Rule 55(c) analysis.  (Pl.'s Mem. in Support of Mot. for Default J. 5-9, ECF No. 40-2).

Having considered the parties' arguments, and for the reasons set forth below, the Court finds that Defendants have not established "good cause" to vacate the entry of default against them, as required by Federal Rule of Civil Procedure 55(c).  Accordingly, Defendants' motion to vacate the entry of default is denied.

### 1.    Meritorious Defense

The first factor considered upon a defendant's motion to vacate an entry of default is whether the defendant has a meritorious defense.  The Third Circuit "consider[s] the meritorious-defense factor the 'threshold issue . . ..'"  *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 522 (3d Cir. 2006) (not precedential) (quoting *Hritz*, 732 F.2d at 1181).  The defendant must "allege[] facts which, if established at trial, would constitute a meritorious defense to the cause of action."  *Wingate Inns Int'l, Inc. v. P.G.S., LLC*, No. 09-6198, 2011 WL 256327, at *3 (D.N.J. Jan. 26, 2011) (internal citation omitted); *see also Nationwide Mut. Ins. Co.*, 175 F. App'x at 522 (explaining that the defendant is required to "set forth with some specificity the grounds for his defense.") (quoting *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 981 (3d Cir. 1988)).  The court then "look[s] at the substance of that defense to determine whether it is meritorious."  *Nationwide Mut. Ins. Co.*, 175 F. App'x at 522 (citation omitted).  "A meritorious defense is one which "if established at trial, would completely bar plaintiff's recovery.'"  *Super 8 Worldwide, Inc. v. Hospitality Solutions of Kinston, Inc*., No. 14-

1025, 2015 WL 3904639, at *3 (D.N.J. June 19, 2015) (quoting *Momah v. Albert Einstein Med. Ctr.*, 161 F.R.D. 304, 307 (E.D. Pa. 1995)).  However, the court "'need not decide the legal issue' at this stage of review."  *Nationwide Mut. Ins. Co.*, 175 F. App'x at 522 (quoting *Emcasco*, 834 F.2d at 74).

Here, Defendants have not offered convincing evidence that a meritorious defense exists.  First, the Court notes that in their motion to vacate the entry of default, Defendants purported to attach a "Proposed Answer" setting forth their defenses.  (Defs.' Mot. to Set Aside Default  ¶¶ 2, 6, 8).  However, no such Answer was attached to the motion.[8]  Accordingly, the Court must rely on the defenses it can glean from Defendants' Memorandum of Law.  Defendants assert that if the case were to proceed to trial, they would show that "there are witnesses to the events leading up to the litigation and legitimate firing of Plaintiff which [sic] will reveal Plaintiff's true motives and biases."  (*Id.* at 8).  Additionally, they claim these unidentified witnesses will reveal that Plaintiff attempted to "gather-up [sic] 'false witnesses' and false statements from others in support of her baseless claims."  (*Id.*).  Lastly, they claim that Plaintiff's damages are "severely exaggerated."  (*Id.* at 9).

These "defenses" amount to nothing more than general denials, attacks on Plaintiff's credibility, and conclusory arguments.  Defendants have failed to set forth any specific facts, which, if established at trial, would constitute a complete defense to the charges pending.  *See Momah*, 161 F.R.D. at 307 ("A court requires the defendant to raise specific facts beyond a general denial so that it has some basis for determining whether the defendant can make out a complete defense.") (citing *$55,518.08 in U.S. Currency*, 728 F.2d at 195); *Reid v. Kraft Gen.*

---

[8]  The Court also notes that Defendants did not otherwise attempt to put their proposed Answer before the Court by, for instance, moving for leave to file out of time pursuant to Fed. R. Civ. P. 6(b)(1)(B).

*Foods Inc., No*. 93-5796, 1994 WL 268258, at *1 (E.D. Pa. June 13, 1994) ("The defendant must do more than assert 'simple denials or conclusory statements,' but rather must set forth with 'some specificity' the grounds for the defense." ) (quoting *Harad*, 839 F.2d at 982).  Indeed, at oral argument, Attorney Chisholm conceded that the defenses proffered are unverified assertions and agreed that the memorandum of law—the only document submitted in furtherance of their motion to vacate—did not contain "any specific facts."  (Hr'g Tr. 22:17-18).  Without a more specific showing, the Court cannot conclude that these unverified allegations would constitute a complete defense to all of the causes of action raised in the Amended Complaint.

Accordingly, the Court finds that Defendants have not established a meritorious defense. This factor weighs against vacating the entry of default.

### 2.    Prejudice to Plaintiff

The second factor requires the Court to consider whether lifting the default would prejudice Plaintiff.  As the Third Circuit has explained, setting aside an entry of default prejudices a plaintiff where it "results in loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment."  *Feliciano*, 691 F.2d at 656-57.  Thus, courts consider whether relevant evidence has been lost or if the plaintiff's ability to pursue her claim has otherwise been affected by the passage of time.  *Momah*, 161 F.R.D. at 307 (citing *Emcasco*, 834 F.2d at 74) (holding that a delay of a few days would not result in a loss of evidence or witnesses sufficient to prejudice the plaintiff); *Feliciano*, 691 F.2d at 656-57 (default entry set aside where defendants waited over seven weeks before answering complaint but plaintiffs did not assert that available evidence would be lost).  "Delay in realizing satisfaction or the fact that the plaintiff will have to prove its case on the merits are rarely sufficient to prevent a

court from opening up a default." *Toy v. Hayman*, No. 07–3076, 2008 WL 5046723, at *3 (D.N.J. Nov. 20, 2008) (citing *Feliciano*, 691 F.2d at 656-57) (internal quotation omitted).

Defendants argue that "there is no foreseeable danger of prejudice" to Plaintiff should the case resume and proceed to trial on the merits because "the length of delay is less than one year" and all witnesses remain available. (Defs.' Mot. to Set Aside Default 6). First, Defendants have caused greater than one year of delay in this case, as they failed to respond to Court Orders, or to any documents served on them, between January of 2014 and March 2015. In any event, the length of delay does not determine the prejudice issue. Rather, the inquiry turns on whether the delay has impeded Plaintiff's ability to bring her case. Here, it undoubtedly has, as Defendants' assertion that all witnesses remain available is inaccurate. In particular, a bouncer at one of the Bars who served as one of Plaintiff's immediate supervisors died during the pendency of this litigation. (Hr'g Tr., 24:19-23, 26:16-29:14). According to Plaintiff, this witness was present on December 31, 2008, the night Baez allegedly exposed his genitalia to Plaintiff and forcibly placed it in her hand, (Hr'g Tr. 32:22-33:2), and therefore may have proven critical to Plaintiff's ability to prove her assault and battery claim against individual defendant Baez.

Defendants assert that this witness would not have been helpful to Plaintiff, (*id.* at 26:17-27:3); however, their only apparent basis for this belief is that Plaintiff did not name or refer to him in her Complaint or Amended Complaint. (*Id.* at 27:20-22). The mere fact that Plaintiff did not list every potential witness at that early phase of the litigation is unsurprising, and certainly not her burden. More critically, in light of the decedent's employment at the Bars and knowledge of the individual parties, it is certainly conceivable that he could have provided relevant information or evidence; however, due to the delay in this action, he is no longer available to contribute his knowledge to the Court's search for the truth. This is enough to

11

establish prejudice.  Moreover, Plaintiff further asserts that the delay in this case has cost her a second witness:  a woman employed at the Bars who makes similar allegations against Defendants, but who is no longer willing to continue her involvement due to the duration of this action.  (*Id.* at 24:20-23, 29:1-14).  Defendants have presented no argument to rebut Plaintiff's contention that this witness would have contributed relevant testimony in this case.

Because the delay has resulted in the loss of relevant evidence, the Court finds Plaintiff will be prejudiced if the entry of default is vacated.  Accordingly, the Court finds this factor also weighs against vacating the entry of default.

### 3.      Defendants' Culpability

The third prong requires an inquiry as to whether the culpable conduct of the defendant led to the default.  *See Hritz*, 732 F.2d at 1181.  "Culpable conduct," in the context of Rule 55(c), requires an examination of the "willfulness" or "bad faith" of a non-responding defendant.  *Id.* at 1183; *see also Hill v. Williamsport Police Dept.*, 69 F. App'x 49, 52 (3d Cir. 2003) (not precedential) (defining culpable conduct as "conduct that is taken willfully or in bad faith.").  Thus, "[a]ppropriate application of the culpable conduct standard requires . . . more than mere negligence."  *Estate of Hernandez v. Kretz*, No. 12-3152, 2015 WL 4392366, at *3 (D.N.J. July 15, 2015) (quoting *Hritz*, 732 F.2d at 1183).  "Reckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard."  *Hritz*, 732 F.2d at 1183.  For example, the Third Circuit affirmed the District Court's finding of culpability on the following facts:

> Starlight does not dispute that it received all key correspondence in this case. It did not reply to Nationwide's May 2004 letter. It also did not, as the District Court found, "answer, appear, or plead in response to the July 20, 2004 summons and complaint; the August 11, 2004 motion for default; the August 12, 2004 entry of default; or the September 16, 2004 motion for default judgment. At no time

> during this entire proceeding did [Starlight] contact either [the District] Court or Nationwide." *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc*., 2004 WL 2609119, at *2–3, 2004 U.S. Dist. LEXIS 23297, No. 04–3393, mem. op. at 6–7 (E.D.Pa. Nov. 16, 2004). Instead, Starlight simply gave all the paperwork to its insurance broker. This is the kind of reckless disregard for repeated communications regarding a suit that establishes a defendant's culpability.

*Nationwide Mut. Ins. Co*., 175 F. App'x. at 523 (citation in original).

In the case at hand, Defendants are similarly culpable for the default because they have engaged in a persistent pattern of ignoring the Court and failing to respond to any correspondence related to this litigation. Defendants do not contest that they were properly served with the Court's Order directing them to appear and show cause as why Attorney Gold should not be allowed to withdraw. (Aff. of Service, ECF No. 18). Yet, without any explanation, they failed to appear at the show cause hearing.[9] Likewise, Defendants failed to

---

[9] Defendants do make a passing argument regarding service on the Bars. They claim that the "summons and complaint in this action were served on an agent who, at the time, had no specific title other than manager but who did receive mail and correspondence" on their behalf. (Defs.' Mot. to Set Aside Default 1 ¶ 1). They do not further develop this argument, and the Court cannot determine if they intend to challenge service of the original or the Amended complaint. Assuming this challenge relates to the Amended Complaint, which underlies the default in this Action, the Court finds the argument without merit.

Service on a corporate entity may be made by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1) provides for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed.R.Civ.P. 4(e)(1). Pennsylvania Rule of Civil Procedure 424 provides, in relevant part, that service can be effectuated upon a corporation by delivering the summons and complaint to "the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity." Pa. R. Civ. P. 424(2).

In this case, affidavits of service establish that Marv Love accepted service of the summons and amended complaint on their behalf. (ECF Nos. 27-29). Defendants concede that he was a manager of the Bars at the time of service, as well as their owner; accordingly, service

answer, appear, or plead in response to the April 28, 2014 Amended Complaint and Summons, or the June 30, 2014 request for default.  It was only after Plaintiff filed her motion for default judgment on January 7, 2015 that the individual defendants made some attempt to defend themselves in this litigation by appearing in person at the evidentiary hearing scheduled on March 2, 2015.  However, despite awareness of the hearing, Defendants did not file a prehearing memorandum as instructed in the Court's Order setting the hearing date.  (Order, ECF No. 32).  Defendants' failure to respond to any motion or order in this case until the very last moment, when default judgment was pending, demonstrates more than mere negligence.

Contrary to Defendants' assertions, their current position is solely the result of their own reckless disregard.  Defendants first argue that they are not culpable for the default because they were abandoned by Attorney Gold.  (Defs.' Mot. to Set Aside Default at 7).  However, the record plainly belies Defendants' claim of abandonment.  In his emergency motion to withdraw, Attorney Gold details many attempts to communicate with Defendants regarding this case, explaining that he could not mount a defense due to "Defendants' repeated lack of communication which resulted in [] their failure to cooperate . . . in connection with the defense of this case.  Specifically, Defendants have continually failed and refused to return the telephone calls and letters."  (Mem. of Law in Supp. of Emergency Mot. to Withdraw 6, ECF No. 15).  Moreover, he explained that Defendants had "failed and refused to remit payment . . . for legal services performed to date."  (*Id.*).  Though Defendants argue that this "sudden vacating of legal representation left [them] in a legal abyss," (Defs.' Mot. to Set Aside Default 7), the Court must reiterate Defendants had the opportunity to appear and be heard before the Court allowed counsel to withdraw.  Indeed, the Court issued a rule returnable on the motion, directing Defendants to

---

of the summons and complaint was sufficient under Pennsylvania law and Federal Rule of Civil Procedure 4(e)(1).

appear and show cause as to why the motion should not be granted, which Defendants ignored. Out of an abundance of caution, the Court then stayed the matter an additional sixty days to afford Defendants sufficient time to retain new counsel.

Defendants claim that they did not believe they needed to appear at the hearing on Attorney Gold's request to withdraw, or retain new counsel, because they believed matters with Attorney Gold would resolve themselves. (Hr'g Tr. 13:23-24). However, even crediting that they may have believed that Attorney Gold would remain involved in their defense, any good faith basis for this belief evaporated following the hearing, when Defendants received the Court's Order granting Attorney Gold's motion to withdraw, giving them sixty days to retain new counsel, and explaining that the failure to do so would result in the Court assuming that they intended to proceed *pro se*. Further, there is no indication in the record that Defendants made any attempt to resolve their conflict with Attorney Gold. Defendants are culpable for failing to respond to the Amended Complaint, notwithstanding their unsubstantiated and unreasonable belief that Attorney Gold would remain involved their suit. *See Artilligence, Inc. v. Natrol, Inc.*, No. 12-1167, 2014 WL 5093167, at *3 (D.N.J. Oct. 10, 2014) (finding plaintiffs culpable for default where they failed to participate in the suit following the court's granting counsel's motion to withdraw as their attorney).

Defendants alternately contend that they are not culpable because they did not understand the need to file a responsive pleading to the Amended Complaint in light of their "sudden" status as *pro se* litigants. (Defs.' Mot. to Set Aside Default 7). Specifically, they believed that because Attorney Gold had answered the first Complaint, they did not need to do anything to respond to the Amended Complaint. (Hr'g Tr. 14:10-15:6). The Court is sympathetic to the inherent difficulties of proceeding *pro se*; however, as explained above, Defendants' default to *pro se*

15

status was not sudden or inexplicable.  If Defendants legitimately had questions about their obligations as *pro se* litigants, it seems highly questionable that they reasonably concluded that the appropriate course of action was to ignore all correspondence related to this litigation for more than year, and later plead ignorance.

It is well-established that "all litigants, including [*pro se* litigants], have an obligation to comply with Court orders.  When they flout that obligation, they, like all litigants, must suffer the consequences of their actions."  *Bridges Fin. Grp., Inc. v. Beech Hill Co*., No. 09-2686, 2011 WL 1485435, at *5 (D.N.J. Apr. 18, 2011) (entering default judgment notwithstanding defendant's *pro se* status) (quoting *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988)).  In this case, even accounting for the fact that Defendants were *pro se* at the time they were served with the Amended Complaint, they are culpable for the default.  If Defendants were unaware that they were required to respond to the Amended Complaint, they were made so aware in June of 2014 when the Clerk of Court entered default in this case on the basis of their failure to respond.  Inexplicably, they did not immediately move to address this situation, but rather waited another eight months — until Plaintiff filed for default judgment and the Court scheduled a hearing on the matter — to appear and offer an explanation. The Court finds no good faith basis for this conduct.  *See Barnes v. Printron, Inc*., No. 93-5085, 1999 WL 335362, at *3 (S.D.N.Y. May 25, 1999) ("[W]here a party is notified that he is in default and he apparently makes no effort to appear *pro se* or to explain his situation to the opposing party and to the court, such neglect is inexcusable.").

Therefore, as Defendants' culpable conduct caused their default, this factor also weighs in favor of denying their motion to vacate the entry of default.[10]

### 4.      Conclusion

The Court is cognizant that the law favors disposition of claims on the merits, and therefore "in a close case doubts should be resolved in favor of setting aside the default and obtaining a decision on the merits." *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982). This is not a close case: every factor and the balance of equities weighs in favor of denying the motion to reopen this case and proceed on the merits. Therefore, Defendants' motion to vacate the entry of default is denied.

### B.      Motion for Default Judgment

Also before this Court is Plaintiff's Motion for Default Judgment. (ECF No. 31). The district court retains the discretion to enter a default judgment. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (explaining that appellate court reviews district court's entry of default judgment for abuse of discretion). In determining whether to grant default judgment, courts in this district consider, *inter alia*, whether the court has subject-matter jurisdiction and personal jurisdiction, whether service of process was proper, and whether the complaint

---

[10]   Defendants also request that the Court take note "that this is a default for failure to answer an amended complaint and not a total default judgment." (Defs.' Mot. to Set Aside Default 8). Though this argument is not entirely clear, Defendants appear to be arguing that they are only partially in default because they answered the original Complaint. This argument is not persuasive. "When an amended complaint is filed, it supersedes the original and renders it of no legal effect . . .." *West Run Student Housing Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (collecting cases). Thus, the Amended Complaint in this action replaced the original Complaint, and Defendants were obligated to respond to it as if it were the original. *See Barnes*, 1999 WL 335362, at *2-3 (denying motion to vacate default where defendant, represented by counsel, responded to an original complaint, but after counsel withdrew, failed to respond to the amended complaint). Accordingly, Defendants are in default as to all causes of action raised in the Amended Complaint.

establishes a legitimate cause of action against the defendant.[11]   *See, e.g.*, *Rayz v. Progressive Ad Solutions, LLC*, 14-7147, 2015 WL 3555310, at *1 (E.D. Pa. June 8, 2015) (internal citation omitted); *Jimenez v. Rosenbaum–Cunningham, Inc.*, No. 07–1066, 2010 WL 1303449, at *4 (E.D. Pa. Mar. 31, 2010) (stating that "as a threshold matter [before entering default judgment,] we must determine whether the [complaint] establishes a legitimate cause of action" and, after reaching this determination, "we should also ensure that we have both personal and subject matter jurisdiction"); *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) ("[A]s a threshold matter [before entering default judgment], the court must first satisfy itself that it has personal jurisdiction over the party against whom default judgment is requested.").

Additionally,

> [t]he court accepts as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof, as well as all reasonable inferences that can be drawn therefrom. Conclusory allegations and the parties' legal theories or conclusions of law, however, are not entitled to the same presumption and are not deemed admitted.

*State Farm Fire & Cas. Co. v. Hunt*, No. 14–6673, 2015 WL 1974772, at *3 (E.D. Pa. May 4, 2015) (internal citations omitted).   Accordingly, if the Court opts to enter default judgment, it is required to calculate the appropriate amount of damages; the Court cannot merely accept the plaintiff's representations on this issue.   *Compendia Songs v. On Top Communications, L.L.C.*, No. 04–252–GMS, 2004 WL 2898070, at *2 (D. Del. Nov. 15, 2004).   A court "may conduct [a]

---

[11]   When a party has failed to appear, the Court must additionally consider prejudice to the plaintiff if default judgment is denied, whether the defendant appears to have a litigable defense; and whether the defendant's delay is due to culpable conduct.   *Frenkel v. Baker*, No. 13-5880, 2014 WL 5697449, at *4 (E.D. Pa. Nov. 4, 2014) (citing *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)).   I need not consider these factors because Defendants did appear, and the Court already considered these factors in denying their motion to vacate the entry of default.

hearing or order such references as it deems necessary and proper" in order "to determine the amount of damages." *City Select Auto Sales, Inc. v. David/Radall Associates, Inc.*, No. 11-2658, 2015 WL 4507995, at *4 (D.N.J. July 23, 2015); *see also Pearson v. Sonnet Trucking, Inc.*, No. 09-5917, 2011 WL 2923689, at *2 (E.D. Pa. July 20, 2011). The Court may also "rely upon detailed affidavits submitted by the parties." *J & J Sports Prods., Inc. v. Puentenueva*, No. 14-3226, 2014 WL 7330477, at *2 n.1 (E.D. Pa. Dec. 22, 2014) (internal citation omitted).

After reviewing the above-referenced factors, entry of a default judgment is proper in this case.

### 1.    Jurisdiction and Service

The Court has both subject matter jurisdiction over this dispute and personal jurisdiction over Defendants. Subject matter jurisdiction is proper under 28 U.S.C. § 1331, which grants original jurisdiction to civil actions arising under the constitution, laws, or treaties of the United States. Plaintiff pleads a violation of Title VII of the Civil Rights Act of 1964, as amended, and it is well-established that such actions "fit within the Judicial Code's grant of subject-matter jurisdiction to federal courts over actions 'arising under' federal law." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 500 (2006) (quoting 28 U.S.C. § 1331). Furthermore, because Congress has also authorized federal courts to exercise "supplemental" jurisdiction over state-law claims linked to a federal claim, 28 U.S.C. § 1367(a), the Court has jurisdiction over Plaintiff's related state-law causes of action.

The Court also has personal jurisdiction over the individual and corporate defendants. With regard to the individual defendants, Love and Baez, the record reflects that both are domiciled in the Commonwealth of Pennsylvania. *See Daimler AG v. Bauman*, ⸻ U.S. ⸻, 134 S.Ct. 746, 760 (2014) (explaining that an "individual's domicile," or home, constitutes the

19

paradigmatic "forum for the exercise of general [personal] jurisdiction.") (quoting *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 —U.S. ——, 131 S.Ct. 2846, 2853-54 (2011)).

Plaintiff has provided the Court with proof of service of Love and Baez at their residences in

Philadelphia, Pennsylvania, and Croydon, Pennsylvania, respectively.  (ECF Nos. 24, 25); *see

also LNV Corp. v. Catalano*, No. CV 15-3219, 2015 WL 4941962, at *4 (E.D. Pa. Aug. 19,

2015) (relying on affidavits of service to establish personal jurisdiction).  With regard to the

corporate defendants, the paradigmatic forum for the exercise of general jurisdiction is "the one

in which the corporation is fairly regarded as at home." *Goodyear*, 131 S. Ct. at 2853-54

(identifying domicile, place of incorporation, and principal place of business as "paradig[m]"

bases for the exercise of general jurisdiction) (internal citation omitted).  Here, the record reflects

that the corporate defendants are establishments that regularly operate, and have a principal place

of business, in Philadelphia.  (Am. Compl. ¶¶ 9-11).  Service on the corporate defendants was

proper pursuant to Fed. R. Civ. P. 4(h)(1) and Pennsylvania Rule of Civil Procedure 424(2).

(ECF Nos. 27-29).

 Thus, the Court is satisfied that it has jurisdiction to enter default judgment.

##   2. Cause of Action

 Since a party in default does not admit conclusions of law, the Court must next determine

whether the unchallenged facts set forth in Plaintiff's Amended Complaint establish a cause of

action.  *See Maryland Cas. Co. v. Frazier Family Trust*, No. 13-2311, 2014 WL 345218, at *2

(E.D. Pa. Jan. 30, 2014) (citing *Carroll v. Stettler*, 2012 WL 3279213, at *2 (E.D. Pa. Aug.10,

2012)).  In conducting this analysis, the Court accepts all factual allegations in the complaint,

except for those related to damages, as true.  *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149

(3d Cir. 1990).  However, the Court need not accept a plaintiff's legal conclusions.  *See, e.g.*,

*Caplan v. Premium Receivables LLC*, 15-CV-474, 2015 WL 4566982, at *1 (W.D. Pa. July 29, 2015) (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008)).

The Amended Complaint set forth the following six counts: (1) Count I, against the Bars, asserted discrimination based on sexual harassment, in violation of Title VII; (2) Count II, against all defendants, asserted discrimination in violation of the PHRA; (3) Count III, against individual defendant Baez, asserted assault and battery; (4) Count IV, against individual defendant Baez, asserted intentional infliction of emotional distress; (5) Count V, against individual defendant Baez, alleged outrageous conduct causing emotional distress; and (6) Count VI, against individual defendant Love and the Bars, alleged negligent hiring, retention and supervision.  (Am. Compl. ¶¶ 53-85).  For the reasons that follow, the facts in Plaintiff's Amended Complaint support the claims set forth in Counts I, II, and III only.

Taking the facts in the Amended Complaint as true, Plaintiff has set forth a cause of action under Title VII and the PHRA.[12]  In pertinent part, Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1).  The Supreme Court has held that Title VII's ban on sex discrimination includes two types of sexual harassment: "*quid pro quo*" harassment, whereby sexual conduct is linked to the grant or denial of economic incentives, and "hostile work environment" harassment, whereby the conduct complained of "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986).  "To make out a claim for *quid pro quo* sexual

---

[12]  District Courts in the Third Circuit interpret Title VII and the PHRA identically and construe the protections of the two statutes interchangeably.  *Hussein v. UPMC Mercy Hosp.*, 466 F. App'x 108, 111 (3d Cir. 2012) (quoting *Fogleman v. Mercy Hosp.*, 283 F.3d 561, 567 (3d Cir. 2002)).

harassment, an employee must show that a supervisor conditioned tangible job benefits on the employee's submission to unwelcome sexual conduct or penalized her for refusing to engage in such conduct." *See Bernard v. E. Stroudsburg Univ.*, No. 09-00525, 2014 WL 1454913, at *17 (M.D. Pa. Apr. 14, 2014) (citing *McGraw v. Wyeth-Ayerst Labs., Inc.*, No. 96-5780, 1997 WL 799437, at *3 (E.D. Pa. Dec. 30, 1997)).  To state a claim for discrimination based on hostile work environment, a plaintiff must prove that: (1) she suffered intentional discrimination because of her gender; (2) the discrimination was regular and pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would negatively affect a reasonable person of the same gender in that position; and (5) the existence of *respondeat superior* liability.[13] *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001)).

The facts set forth in the Amended Complaint reveal that Plaintiff was an adult female employed by Defendants as a bartender beginning in September 2008.  (Am. Compl. ¶¶ 8, 16-17).  During Plaintiff's employment, she was immediately supervised by individual defendant Wilfredo Baez, who was also an employee of the Bars.  (*Id.* ¶¶ 12, 18).  Shortly after her hiring, Baez began to make sexual comments to Plaintiff, and demand that Plaintiff engage in a sexual relationship with him.  (*Id.* ¶ 21-22).  Plaintiff states that throughout the period of her employment, Baez repeatedly demanded that Plaintiff have a sexual relationship with him, made sexual comments to her, touched her in a sexual manner, and made sexual advances upon her;

---

[13] *Respondeat superior* liability exists in connection with a hostile environment sexual harassment claim if the harasser has actual authority over the victim, by virtue of his job description.  *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 26 (3d Cir. 1997) (*citing Bouton v. BMW of North America, Inc.*, 29 F.3d 103, 106 (3d Cir. 1994)).  The Supreme Court has also held that an employer can be held vicariously liable under Title VII for harassment of an employee by her supervisor where the harassment "culminates in a tangible employment action," such as firing.  *Compare Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) *with Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

Plaintiff continually protested and resisted.  (*Id.* ¶¶ 21-23, 29-30).  On December 31, 2008, Defendant Baez grabbed Plaintiff when they were alone, removed his penis from his pants, and forcibly placed his penis in Plaintiff's hand.  (*Id.* ¶ 22(b)).  Plaintiff contends that she ran away to extricate herself from this situation, at which point Baez looked up her skirt.  (Id. ¶ 22(c)-(d)).  In March or early April 2009, Plaintiff told Baez "in no uncertain terms" that she was never going to have sexual relations with him or any other manager at her place of employment.  (*Id.* ¶ 24).  Immediately after complaining to Baez, Plaintiff's hours were reduced, resulting in a reduction in weekly pay.  (*Id.* at ¶¶ 24-25).  Shortly thereafter, Plaintiff's employment was formally terminated.  (*Id.* ¶ 26).

Plaintiff has established *quid pro quo* harassment.  Baez, Plaintiff's supervisor, engaged in a pattern of persistent and unwelcome sexual contact, which Plaintiff continually resisted.  Moreover, shortly after Plaintiff unequivocally told Baez that she would never have intercourse or any other sexual contact with him, Baez reduced her hours and terminated her employment.  Crediting these facts, Plaintiff has established that her rejection of Baez's unwelcome sexual conduct was the basis for the decision to terminate her employment, establishing *quid pro quo* harassment.  *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1296 (3d Cir. 1997) ("[U]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when . . . rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual."), *overruled in part on other grounds by Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

The facts also establish Plaintiff's claim of discrimination based on hostile work environment.  Over a period of approximately seven months, Plaintiff was subject to regular sexual propositioning from her male supervisor, including instances of unwanted touching and

one instance in which Plaintiff was forced to touch her supervisor's penis.  These facts reflect conduct severe and pervasive enough to create a hostile work environment.  *See Bull v. Target Corp.*, No. 14–6838, 2015 WL 1266792, at *3 (D.N.J. Mar.17, 2015) (factors assessed in determining whether work environment is hostile include frequency of the conduct, whether it is physical threatening or humiliating, and whether it unreasonably interferes with an employee's work performance) (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).  Plaintiff has also shown that this work environment was subjectively detrimental to her personally, as she claimed that it made her uncomfortable and left her "emotionally distraught, humiliated, and in fear," (Am. Compl. ¶ 36); moreover, this situation was objectively unreasonable.  *Respondeat superior* liability is established due to Baez's status as Plaintiff's immediate supervisor and the unchallenged fact that he took "tangible employment action" against her by terminating her employment.  *See Hitchens v. Montgomery Cnty.*, 278 F. App'x 233, 235-36 (3d Cir. 2008) (citing *Burlington Indus.*, 524 U.S. 742 at765).

Accordingly, I find that Plaintiff has sufficiently stated a cause of action for discrimination based on *quid pro quo* and hostile work environment harassment under Title VII and the PHRA.

With regard to Plaintiff's state law claims, the Court finds that Plaintiff has established her claim of assault and battery against Defendant Baez, but not intentional infliction of emotional distress ("IIED") against him or negligence in hiring, supervising or retention against Love and the Bars.[14]

---

[14]  Plaintiff separately sets forth "outrageous conduct causing emotional distress" as a cause of action.  (Am. Compl. ¶¶ 77-79).  Under Pennsylvania law, this tort is identical to IIED.  *See Kazatsky Inc.*, 527 A.2d at 991 (Pa. 1987) (Addressing a cause of action for outrageous conduct causing severe emotional distress as "the tort of intentional infliction of emotional distress . . ..").

Under Pennsylvania law,

> an individual commits the tort of battery when he or she
> intentionally causes a "harmful or offensive" contact with another
> person's body. *C.C.H. v. Phila. Phillies, Inc*., 596 Pa. 23, 940
> A.2d 336, 340, n. 4 (2008). An individual commits the tort of
> assault when he or she acts to cause an actual battery or to place
> another person in "imminent apprehension" of a battery, thereby
> causing the person to be "put in such imminent apprehension."
> *Jackson v. Pa. Bd. of Prob. & Parole*, 885 A.2d 598, 601 n.2 (Pa.
> Commw. Ct. 2005) (quoting the Restatement (Second) of Torts §
> 21 (1965))

*Zion v. Nassan*, 283 F.R.D. 247, 264 (W.D. Pa. 2012), *aff'd*, 556 F. App'x 103 (3d Cir. 2014)

(citations in original). Here, taking the facts in the Amended Complaint as true, Plaintiff has

established a cause of action for battery against individual defendant Baez. She alleges that he

"grabbed [Plaintiff] when they were alone," removed his penis from his pants, and forcibly

placed it in Plaintiff's hand. (Am. Compl. ¶ 22). This is plainly a "harmful or offensive"

contact" with another's body. Moreover, the facts demonstrate that Defendant Baez acted with

intent to cause this battery, therefore also satisfying the elements for assault. Accordingly, I find

Plaintiff has sufficiently established a cause of action for assault and battery against individual

defendant Baez.

The Pennsylvania Supreme Court has yet to formally recognize a cause of action for

IIED, but it has indicated that if it were to recognize such a cause of action, a plaintiff would, at

minimum, need to establish that (1) the defendant's conduct was intentional or reckless, (2) the

defendant's conduct was extreme and outrageous, (3) the defendant's conduct caused emotional

distress, and (4) the resultant emotional distress was severe. *Dull v. W. Manchester Twp. Police

Dep't*, 604 F. Supp. 2d 739, 755, 755 n.12 (M.D. Pa. 2009) (citing *Taylor v. Albert Einstein Med.

Ctr*., 754 A.2d 650, 652 (Pa. 2000)). Under Pennsylvania law, actual injury is a prerequisite for

an IIED claim. *See Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987)

(explaining that the alleged emotional distress must be supported by competent medical evidence); *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122-23 (Pa. Super. Ct.2004) ("[P]laintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct."); *see also Di Loreto v. Costigan*, 600 F. Supp. 2d 671, 690 (E.D. Pa. 2009) ("Pennsylvania law requires some type of physical harm due to the defendant's outrageous conduct to satisfy the severe emotional distress element."); *Robinson v. May Dep't Stores Co.*, 246 F. Supp. 2d 440, 444 (E.D. Pa. 2003) (same).  Here, Plaintiff has not alleged any physical injury associated with Defendant Baez's conduct, except to generally allege that it caused her emotional distress.  She has not substantiated her emotional distress with competent medical evidence, such as an affidavit from her physician, detailing her resultant physical symptoms. Therefore, Plaintiff has not established that she should recover on her IIED claim.

Similarly, Plaintiff has not established a cause of action for negligent hiring, retention and supervision against Marv Love and the Bars.  In Pennsylvania, a plaintiff seeking to recover on a negligent hiring theory must show: (1) employer defendant knew or should have known of the violent propensity of the employee and (2) such employment creates a situation in which a third party may be harmed.  *See, e.g.*, *Coath v. Jones*, 419 A.2d 1249, 1250 (Pa. 1980) (citing *Dempsey v. Walso Bureau Inc.*, 246 A.2d 418 (Pa. 1968) (applying Second Restatement of Torts Section 317 to hold that employer could be held liable if the plaintiff could prove "that the employer knew, or in the exercise of ordinary care, should have known of the necessity for exercising control of [the employee]," but concluding that "there [was] no evidence of record to show either knowledge or reason for knowledge on the part of [the employer] of [the employee's] conduct.")).  More recently, in *Hutchison ex rel. Hutchison v. Luddy*, the Supreme

Court of Pennsylvania emphasized the importance of the defendant employer's knowledge of prior conduct by the employee.  742 A.2d 1052, 1059-60 (Pa. 1999).

Here, even taking all facts in the Amended Complaint as true, Plaintiff has failed to establish that Marv Love or the Bars knew or reasonably should have known that Baez had a propensity for sexually harassing behavior or assault, or had ever engaged in such conduct. Notably, Plaintiff does not allege that she ever complained to Love or any other supervisor regarding Baez, nor does she articulate specific facts suggesting that any other employee ever did so.  The Amended Complaint fails to allege that Love was aware — or with reasonable investigation could have been made aware — of prior instances of such conduct.  Though Plaintiff generally alleges that the corporate defendants and Marv Love "knew or should have known that Defendant Baez possessed certain characteristics or propensities, or had engaged in or was engaging in behavior or conduct that rendered him unfit or incompetent to work in his position," (Am. Compl. ¶¶ 46-47), this is mere legal conclusion that the Court need not accept. Because Plaintiff has failed to demonstrate knowledge on the part of Love or the Bars, she has not sufficiently proven her negligent hiring, supervision, or retention claim.

For these reasons, Plaintiff has established causes of action for discrimination under Title VII and the PHRA against the Bars and assault and battery against individual defendant Baez. Damages shall be assessed on those claims only.

### 3.    Damages

After a Court determines that judgment by default should be entered as to liability, the court must address the quantum of damages or other recovery to be awarded.  The Court may determine the amount of damages by conducting a hearing or upon submission of affidavits. *Jonestown Bank and Trust Co. v. Automated Teller Mach., Services, Inc.*, 2012 WL 6043624, *4

(M.D. Pa. 2012) (explaining that the Court may determine damages by asking parties to submit "affidavits and other materials from which the court can decide the issue.") (citing 10 James Wm. Moore, et al., Moore's Federal Practice § 55.32[2][c] (Matthew Bender ed. 2010)); *Frenkel v. Baker*, No. 13-5880, 2014 WL 5697449, at *12 (E.D. Pa. Nov. 4, 2014) (citing *Amresco Fin. Financial I L.P. v. Storti*, 2000 WL 284203, at *2 (E.D. Pa. Mar. 13, 2000)) (entry of default with an award of damages proper where award can be ascertained from figures in evidence and affidavits).

Plaintiff demands back and front pay, compensatory damages for emotional distress, and punitive damages for the Title VII violation.  (Pl.'s Prehearing Mem. 6-8, ECF No. 36).  She additionally requests compensatory and punitive damages on her claim of assault and battery against individual defendant Baez, and an award of attorney's fees and costs.  (*Id.* at 10-11).

After reviewing the documents in evidence, the Court enters default judgment in favor of Plaintiff and awards damages as follows: (1) damages for back pay in the amount of $65,130; (2) damages for emotional distress in the amount of $10,000; (3) punitive damages against individual defendant Baez in the amount of $10,000.  Plaintiff is not entitled to attorney's fees and costs at this time, but may renew her motion for the same.

### a.      Back and Front Pay

The equitable remedies available to a prevailing plaintiff in a Title VII or PHRA action include the awards of back pay and front pay.  *See Miller v. Tyco Electronics, Ltd.,* 1:10–CV2479, 2012 WL 5509710, at *3 (M.D. Pa. Nov.14, 2012) (citing *Eshelman v. Agere Sys., Inc.,* 554 F.3d 426, 440 (3d Cir. 2009); *Gunby v. Pa. Elec. Co.,* 840 F.2d 1108, 1119 (3d Cir. 1988)).  An award of "back pay is designed to make victims of unlawful discrimination whole by restoring them to the position they would have been absent the discrimination."  *Donlin v.*

28

*Philips Lighting N. Am. Corp.*, 581 F.3d 73, 84 (3d Cir. 2009) (*Loeffler v. Frank*, 486 U.S. 549, 558, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988)).

The standard calculation for back pay is "'to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for discrimination, the individual would have attained.'" *McKenna v. City of Philadelphia,* 636 F. Supp. 2d 446, 456 (E.D. Pa. 2009) (quoting *Gunby*, 840 F.2d at1119-20). Relief may also be granted in the form of front pay if the plaintiff can also show that reinstatement of her position is not possible. *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 796 (3d Cir. 1985). A district court has wide discretion in awarding a plaintiff either of these equitable remedies. *Donlin*, 581 F.3d at 84-86.

As an initial matter, the parties are in dispute as to the actual wages earned by Plaintiff while employed at the Bars, which clearly is germane to the calculation of back pay. Neither Plaintiff nor Defendants have been able to produce pay stubs, tax returns, or other documentation to support their claims regarding Plaintiff's earnings. At the conclusion of the May 27, 2015 hearing and outside the presence of the Court, the parties attempted to reach agreement regarding Plaintiff's weekly rate of pay; however, they were unsuccessful. (Hr'g Tr. 42:13-43:13). Following the hearing, and in accordance with the Court's Order, (ECF No. 41), the parties submitted affidavits in furtherance of their position as to damages that addressed the wage issue. (ECF Nos. 43-47).

Plaintiff claims that prior to her complaint regarding Baez's conduct, she earned approximately $1000 to $1200 per week.[15] (Aff. of Keila Rios ¶ 7, ECF No. 43). Defendants

---

[15] Plaintiff contends that she can substantiate this amount by relying on radio advertisements the Bars ran to attract prospective employees in 2008, in which they purportedly claimed that bartenders could earn more than $1000 per week. (Pl.'s Prehearing Mem. 5; Pl.'s

have submitted the affidavit of Christina McClendon, a bartender at the Bars during the period of

Plaintiff's employment who is presently employed at those establishments.  (Aff. of Christina

McLendon ¶¶ 1-2, ECF No. 44).  Citing Plaintiff's demeanor and performance, as well as her

own experience as a bartender at the Bars, McClendon avers that Plaintiff consistently earned no

more than $500 per week in tips and wages.  (*Id.* ¶ 23).  Individual defendant Baez further

swears that Plaintiff did not have the ability or capacity to earn more than $450 per week.  (Aff.

of Wilfredo Baez ¶ 34, ECF No. 45).  Considering all of the evidence, the Court finds it fair and

appropriate to apply an average weekly wage rate of $500.  *See Ditullio v. Pizzo*, No. 89-5673,

1991 WL 129860, at *2 (E.D. Pa. July 11, 1991), *aff'd*, 953 F.2d 1379 (3d Cir. 1992) (using

$400 as weekly wage of go-go dancer who could not substantiate claimed weekly rate of pay of

$800).

Assuming an average weekly salary of $500, Plaintiff would have earned $86,500 in the

173 weeks between her termination in April 2009 and August 2012.[16]  Instead, as set forth in her

---

Reply in Supp. of Mot. for Default J. 9; Aff. of Keila Rios ¶ 31).  Defendants assert that these
advertisements were for dancers, not bartenders, and pertained to Set It Off, exclusively.  (Aff. of
Wilfredo Baez ¶ 16).  Even if the ads were germane to bartenders' wages, the advertised weekly
rate of pay is only minimally probative of the amount *actually* earned by Plaintiff.  Accordingly,
the Court will rely on the affidavit evidence.  The Court also finds illustrative that Plaintiff
worked as a bartender at three other local establishments following the termination of her
employment at the Bars, and did not earn more than $350 per week at any of these
establishments.  (Aff. of Keila Rios ¶¶ 12-15).

[16]  When a plaintiff finds employment that is substantially equivalent or better than the
position from which she was wrongfully terminated, the right to damages ends.  *See Donlin*, 581
F.3d at 84 (explaining that back pay is no longer necessary to achieve an equitable purpose once
the plaintiff has been restored to the position she would have been in absent the discrimination)
(citing *Ford Motor Co. v. EEOC*, 458 U.S. 219, 236 (1982)).  "Substantially equivalent"
employment affords "virtually identical promotional opportunities, compensation, job
responsibilities, and status as the position from which the Title VII claimant has been
discriminatorily terminated."  *Id.* (citing *Booker v. Taylor Milk Co*., 64 F.3d 860, 866 (3d Cir.
1995)).

Prehearing Memorandum, Plaintiff earned $21,370.[17]  (*See* Pl.'s Prehearing Mem. 5-6).  To compensate Plaintiff for the difference in the amount of wages that she earned after she was discharged, as compared to what she would have earned but for Defendants' discriminatory conduct, the Court concludes that Plaintiff is entitled to back pay in the amount of $65,130.

Plaintiff additionally requests compensation for the "several weeks" following her complaint to Baez but prior to her termination, during which she claims her weekly pay was reduced to $300.  (Pl.'s Prehearing Mem. 7 n.2).  However, Plaintiff can only generally approximate the date of her complaint to Baez as "late March or early April." (Am Compl. ¶24). The Court will not speculate as to how many weeks before her termination Plaintiff complained and therefore how many weeks she allegedly suffered a reduction of wages.  Therefore, the Court will not award damages for this period.  Furthermore, the Court declines to award damages for front pay because there is no demonstrated loss of future earnings.  *See Donlin*, 581 F.3d at 86 n.10 (explaining that if the Court finds that the plaintiff has obtained a substantially equivalent or better job than the one from which she was unlawfully terminated, then front pay would be unwarranted).

---

In this case, Plaintiff began working in August 2012 as a home health care aide with Infinite Care, Inc., a position in which she earns $10.50 per hour and works approximately 45 hours per week.  (Rios. Aff. ¶ 18; Pl.'s Prehearing Mem. 4).  In light of her variable earnings and schedule as a bartender, the Court finds this position to be substantially equivalent in terms of compensation, and superior in terms of responsibilities and status.  Accordingly, the end date for the calculation of damages is August 2012.

[17]  Plaintiff's employment history following her termination is summarized as follows:

| Date | Position | Weekly Earnings | Total Earned |
|------|----------|-----------------|--------------|
| April – June 2009 | Bartender, Lou's Place | $150 | $1650 |
| June 2009 – Jan. 2010 | Bartender, La Barra | $350 | $11200 |
| Jan. 2010 | Bartender, Players Club | $200 | $200 |
| Jan. 2010 – Aug. 2011 | Unemployed | | $0 |
| Aug. 2011 – Aug. 2012 | Home Health Aide | $160 | $8320 |

Accordingly, Plaintiff is entitled to equitable remedies in the form of $65,130 in back pay from Marv Loves 1, Marv Loves Too, and Set It Off.[18]

### b.  Compensatory Damages

Plaintiff requests $100,000 in compensatory damages for her Title VII and PHRA claims. (Pl.'s Prehearing Mem. 7-8).  Title VII authorizes compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."  42 U.S.C. § 1981a(b)(3).  To recover compensatory damages in a Title VII action, a plaintiff must present evidence of actual injury.  *Gunby* at 1121 (addressing damages pursuant to 42 U.S.C. § 1981); *Young v. Pleasant Valley Sch. Dist.*, No. 3:07-00854, 2012 WL 1827194, at *20 (M.D. Pa. May 18, 2012), *aff'd*, 601 F. App'x 132 (3d Cir. 2015) ("[T]o the extent Plaintiff may recover compensatory damages against Defendant . . . , she is only entitled to compensatory damages that have been linked to an actual injury[.]").  However, neither medical evidence nor corroborating testimony is required to prove injury.  *Standen v.*

---

[18]  To the extent Plaintiff seeks damages for her Title VII and PHRA claims from the individual defendants, the Court notes that individual employees may not be held liable under Title VII.  *See generally Kachmar v. SunGard Data Systems,* 109 F.3d 173, 184 (3d Cir. 1997); *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1077-78 (3d Cir. 1996).  Under the PHRA, an individual defendant can be held liable in his personal capacity "if the individual is a supervisor and the plaintiff can demonstrate that the supervisor aided or furthered the employer's discriminatory practices." *Stepp v. Fairpoint Commc'ns, Inc.*, No. 06-576, 2007 WL 4248559, at *9 (W.D. Pa. Nov. 30, 2007) (citing 43 Pa. Cons.Stat. § 955(e)).  "Direct incidents of discrimination or harassment by a supervisor, however, are not covered by the terms of Section 955(e)."  *Id.*

The Court will not hold Love or Baez individually liable for the PHRA violation.  For reasons already discussed herein, there are no facts to demonstrate that Love aided and abetted discrimination, and the facts adduced against Baez suggest that he was directly responsible for the incidents of discrimination and harassment giving rise to the PHRA violation.  Accordingly, damages under these provisions will be assessed against the corporate defendants only.

*Gertrude Hawk Chocolates, Inc.*, No. 3:11-1988, 2014 WL 1095129, at *3 (M.D. Pa. Mar. 19, 2014) (citing *Bolden v. Se. Pa. Transp. Auth.*, 21 F.3d 29, 34 (3d Cir. 1994) (holding that expert testimony is not necessary to corroborate a claim for emotional distress in the civil rights context because of "the broad remunerative purpose of the civil rights laws.")). Ultimately, "[t]here must be a rational relationship between the specific injury sustained and the amount awarded." *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 773 (3d Cir. 1987).

In this case, the evidence supporting the claim for entitlement to compensatory damages consisted of emotional damages. Plaintiff has averred that she has suffered severe emotional and psychological distress and a loss of self-esteem as a result of the assault and the sexually hostile workplace environment. (Aff. of Keila Rios ¶¶ 3-5). Specifically, she states that the sexual harassment, assault, and retaliation left her "uncomfortable, emotionally distraught, humiliated, and in fear." (*Id.* ¶ 4). Plaintiff did not offer evidence that she sought medical or psychiatric attention or treatment for these injuries, nor did she submit any evidence to corroborate the extent of her injury.

In light of Plaintiff's testimony, the Court finds there is sufficient evidence to support an award of damages for emotional distress in the amount of $10,000. *See Thompson v. Cent. Sec. Agency, Inc.*, No. 98-2474, 1999 WL 126918, at *3 (E.D. Pa. Mar. 8, 1999) (awarding $10,000 in compensatory damages in default judgment award where Plaintiff testified to feeling "scared" and "embarrassed" as a result of losing her job due to sex discrimination); *Shesko v. City of Coatesville,* 324 F. Supp. 2d 643, 652 (E.D. Pa. 2004) ($20,000 in compensatory damages awarded in discriminatory failure to promote case where Plaintiff testified to feeling depressed and had difficulty performing her job each day); *see also Manson v. Friedberg*, 08-3890, 2013 WL 2896971, at *7 (S.D.N.Y. June 13, 2013) (granting a $10,000 damage award for plaintiff

who suffered low self-esteem, lacked confidence in herself, and lacked physical manifestations of her emotional distress).

In support of her claim to $100,000 in compensatory damages, Plaintiff relies on *Reczek v. JHA Wilmington, Inc.*, 2008 WL 47230221 (D. Del. Oct. 27, 2008), a race discrimination case in which the Court entered a default judgment award containing $100,000 in compensatory damages based on the plaintiff's testimony regarding emotional injury, *id.* at *3.  However, in *Reczek*, the plaintiff testified that she had obtained a prescription for Xanax because of trouble sleeping, and had sought medical care for stomach problems, all of which she attributed to her discriminatory work environment.  *Id.* at *3.  Further, the *Reczeck* plaintiff testified to ongoing effects from the discriminatory treatment she endured.  Here, by contrast, Plaintiff provided only a general description of her anxiety and other symptoms, limited to the time she was employed at the Bars.  Though these symptoms could certainly be linked to the assault, sexually hostile workplace, and discriminatory termination, there is not sufficient evidence before the Court to support an award of $100,000.  *See Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 153 (E.D.N.Y. 2013) (explaining that "[f]or typical or garden-variety emotional distress claims, district courts have awarded damages ranging from $5,000 to $35,000, based upon the plaintiff's vague or conclusory testimony of distress.").  The Court finds compensatory damages in the amount of $10,000 will adequately compensate Plaintiff for the harm she suffered.

Plaintiff also separately seeks compensatory damages from defendant Baez for the assault and battery.  (Pl.'s Prehearing Mem. 11).  The Court will not award separate compensatory damages because Plaintiff has not set forth any separate, specific injury related to this tort.  Rather, as noted above, her allegations of emotional harm refer to the entirety of her experience at the Bars, including the ongoing and pervasive sexual harassment as well as the incident of

assault.  While the Court does not doubt that an isolated incident of unwanted sexual battery could give rise to emotional harm sufficient to support a separate award for compensatory damages, there are no facts to support such an award in this case.

Accordingly, the Court awards Plaintiff $10,000 in compensatory damages for the Title VII and PHRA violations against Set It Off, Marv Loves 1, and Marv Loves II.

### c.    Punitive Damages

Plaintiff submits that she is entitled to $50,000 in punitive damages for the Title VII violation.[19]  Punitive damages are available under Title VII only "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference . . .."  42 U.S.C. § 1981a(b)(1).  "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination."  *Kant v. Seton Hall University*, Nos. 06–4448, 06–4464, 2008 WL 2212006, at *5 (3d Cir. 2008) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)).  Thus, "punitive damages are a limited remedy and must be reserved for "cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages."  *Cochetti v. Desmond*, 572 F.2d 102, 106 (3d Cir. 1978).

Taking all facts in the Amended Complaint as true, the Court finds that Plaintiff has failed to allege sufficient evidence to support an award for punitive damages under Title VII.  As noted, Plaintiff has not alleged that she complained about Baez's conduct to Defendant Love or other supervisors at the Bars besides Baez.  Though she generally asserts Love was aware of her

---

[19]  Plaintiff does not claim punitive damages under the PHRA, nor are such damages allowable under current state law.  *See Montanez v. Missouri Basin Well Servs.*, No. 4:14-CV-0553, 2015 WL 1608804, at *8 (M.D. Pa. Apr. 10, 2015) (quoting *Hoy v. Angelone*, 720 A.2d 745, 751 (Pa. 1998)).

complaints and those of other female employees, "but did nothing to address them," (Pl.'s Prehearing Mem. 9-10), there are no facts in the record to support this claim.  Because there is no evidence indicating that Love or other management-level employees at the Bars knew of the discrimination, much less that an employee might be acting in violation of federal law, the Court cannot find that they had the requisite state of mind for the assessment of punitive damages under Title VII.  *Cf. Reczek*, 2008 WL 4723021, at *3 (imposing punitive damages in the amount of $60,000 where the plaintiff registered multiple complaints with defendant's management regarding discriminatory treatment, yet no investigation ever occurred, and where evidence supported finding that defendant's management had failed to remediate prior similar acts of racial harassment of which they were aware).

Separately, Plaintiff requests punitive damages for her claim of assault and battery against individual defendant Baez.  (Pl.'s Prehearing Mem. 11).  Punitive damages are proper under Pennsylvania law for an intentional tort when the defendant's "actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct, and are awarded to punish that person for such conduct."  *See Vance v. 46 & 2, Inc*., 920 A.2d 202, 206 (Pa. Super. Ct. 2007) (quoting *SHV Coal v. Continental Grain Co*., 587 A.2d 702, 704 (Pa. 1991)).  Thus, the fact-finder "should examine the actor's conduct" when deciding whether to impose punitive damages.  *Feld v. Merriam*, 485 A.2d 742, 748 (Pa. 1984); *see also SHV Coal*, 587 A.2d at 705 (explaining that "punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others.").  Though Pennsylvania law does not impose a fixed ratio between compensatory and punitive damages, Pennsylvania courts have repeatedly held that an award of punitive damages must bear a reasonable relationship to the award of compensatory damages.  *Daley v. John*

*Wanamaker, Inc.*, 464 A.2d 355, 358 (Pa. Super. Ct. 1983) (citing *Hughes v. Babcock*, 37 A.2d 551 (Pa. 1944); *Mitchell v. Randal*, 137 A. 171 (Pa. 1927)).  However, the Pennsylvania courts have upheld an award of punitive damages where there was no award for compensatory damages.  *Daley*, 464 A.2d at 358 (citing *Rhoads v. Heberling*, 451 A.2d 1378 (Pa. Super. Ct. 1982)).

Here, the facts establish that Defendant Baez cornered Plaintiff in a room while she was alone, exposed his genitalia to her, and forced her to touch his penis.  (Am. Compl. ¶ 22(b)).  When Plaintiff protested, Baez accused her of "playing hard to get," telling her "you act like you don't want it and I know you want it."  (*Id.* ¶ 22(c)).  When she attempted to flee, Baez compounded her injury by looking up her skirt.  (*Id.* ¶ 22(d)).  An award of punitive damages is appropriate to punish this outrageous and despicable behavior, which was plainly performed with reckless indifference to Plaintiff's interests or well-being.  Furthermore, punitive damages are appropriate to deter Baez from future acts of sexual battery against his employees.  In light of the fleeting nature of the encounter, however, and the fact that Plaintiff has not demonstrated any compensatory damages arising therefrom, the Court finds an award of $10,000 against defendant Baez to be appropriate.

### d.    Attorney's Fees and Costs

In an employment discrimination action, the court has discretion to award reasonable attorney's fees to the prevailing party.  42 U.S .C. § 2000e–5(k).  Here, having obtained a default judgment, Plaintiff is plainly a prevailing party in her Title VII action and therefore an award of reasonable attorney's fees is appropriate.  However, Plaintiff's counsel has yet to submit affidavits concerning the fees and costs associated with this action.  Accordingly, the Court

declines to award fees and costs at this time, but will consider the issue at a later date upon proper motion.

**IV.     CONCLUSION**

For the foregoing reasons, the Court denies Defendant's Motion to Vacate the Entry of Default and grants Plaintiff's Motion for Entry of Default Judgment.  Default Judgment shall be entered in the amount of $75,130 against Marv Loves 1, Marv Loves Too, and Set It Off, and $10,000 against individual defendant Wilfredo Baez.

An appropriate Order follows.

**BY THE COURT:**

**   /s/ Lynne A. Sitarski                                **
**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**